UNITED STATES, Appellee

v.

Dante C. POWELL, Specialist
U.S. Army, Appellant.

No. 93–0334.
CMR No. 9101466.

U.S. Court of Military Appeals.

Argued Feb. 2, 1994.

Decided July 20, 1994.

For Appellant: *Captain Beth G. Pacella* (argued); *Lieutenant Colonel James H.*

**2**

*Weise* and *Major Fran W. Walterhouse* (on brief); *Colonel Stephen D. Smith.*

For Appellee: *Captain R.W. Clark* (argued); *Colonel Dayton M. Cramer, Major Kenneth T. Grant, Major James L. Pohl* (on brief).

## Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of wrongful use of cocaine and of larceny (one specification each), in violation of Articles 112a and 121, Uniform Code of Military Justice, 10 USC §§ 912a and 921, respectively. The approved sentence provides for a bad-conduct discharge, confinement and partial forfeiture of pay for 6 months, and reduction to the lowest enlisted grade. The Court of Military Review, in an unpublished opinion, affirmed the findings and sentence, and directed that appellant receive credit for 1 day of confinement, unpub. op. at 5, based on the military judge's finding that appellant had been subjected to "pretrial restraint that was tantamount to confinement." Unpub. op. at 1–2 n. 1. We granted review of the following issue:

> WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

On March 16, 1991, Army and Air Force Exchange Service (AAFES) store detectives were training in the operation of video surveillance devices at the Fort Meade Exchange. While looking through a hidden surveillance camera, AAFES detectives Edmonds and Rivera saw appellant leaving the Exchange through the employee's exit, carrying three packaged bottles of perfume in his hat. Appellant's face and the three packages in his hat are clearly visible on the videotape. The detectives approached appellant outside the Exchange and identified themselves as Exchange detectives. At the time, appellant was holding a bottle of "Opium" perfume in his hand.

Mr. Rivera testified that, when he and Mr. Edmonds initially approached appellant, appellant claimed he did not know why they

were detaining him. When they told him why, appellant stated that his son was in the hospital and he did not have any money to pay for the merchandise. The detectives then asked him for his identification card, and he responded "that he did not have it." They requested him to go with them to the security office, but he refused.

As a military policeman from appellant's unit, Specialist (SPC) Rose, approached, appellant told the detectives that Specialist Rose "knew what this was all about." The store detectives told Specialist Rose that appellant was suspected of shoplifting. Specialist Rose asked appellant if he had a receipt for the items, and appellant responded that he did not. After they were in the security office, the detectives asked appellant if he had any merchandise he wished to surrender. Appellant removed a bottle of perfume from his pants leg. All of the above conversations took place before appellant was advised of his rights under Article 31, UCMJ, 10 USC § 831.

After appellant surrendered the second bottle of perfume, he asked for privacy to make a telephone call. His request was granted, and everyone but appellant left the room. The third bottle of perfume was later recovered from behind a file cabinet in the security office.

At trial appellant testified in his own defense and stated that he had previously purchased the perfume he was accused of stealing, and he produced a receipt as evidence of that purchase. Unfortunately for appellant, the prosecution had obtained the store copy of the same receipt, which showed the time of purchase as being after the time of appellant's apprehension for shoplifting. An exchange employee compared appellant's receipt with the store copy and concluded that the bottom data line containing the time of day of the transaction had been cut off appellant's receipt.

According to defense counsel's affidavit, prior to trial appellant provided her with a list of potential sentencing witnesses, including Captain Belcher, his company commander. Defense counsel contacted many of the

potential witnesses, but found them to be only marginally helpful, because they qualified their testimony by comparing appellant's recent improved performance with his earlier poor performance. She did not contact Captain Belcher, who had already deployed to Saudi Arabia as part of Operation Desert Storm.

Based on earlier experience with the same military judge, defense counsel concluded that the military judge probably would not order the return of Captain Belcher to testify personally. She did not attempt to contact Captain Belcher in Saudi Arabia to determine whether he could provide helpful testimony or explore alternatives to his live testimony. Two or three days before trial, defense counsel learned that Captain Belcher had returned. Defense counsel "did not do much more than make a couple of phone calls, because [she] did not feel that [she] could afford to waste too much time trying to locate someone that I was not even sure was going to say anything positive about SPC Powell."

At trial, defense counsel presented the testimony of appellant's operations sergeant, who testified that appellant performed his duties competently. Defense counsel also presented the testimony of a sergeant who knew appellant socially, who testified that appellant is "a good guy" with "good rehabilitation." Finally, defense counsel offered a packet of awards and commendatory letters from appellant's personnel records.

Appellant made an unsworn statement in which he described his efforts to improve himself and do his job. He described the taunting he received from other members of the military police company. He asked the court-martial to impose a bad-conduct discharge but not to confine him.

After the trial, defense counsel, according to her affidavit, contacted Captain Belcher, who told her "that he firmly believed that SPC Powell would continue to get into trouble for the rest of his life" because "he was like a child." Nevertheless, Captain Belcher submitted a letter to the convening authority requesting clemency for appellant because of his diligent duty performance and his youth.

Captain Belcher told the convening authority in his letter that appellant "does make mistakes, but responds well to corrections." Captain Belcher did not believe that appellant needed to spend more time in confinement. He asked the convening authority to "[d]ischarge [appellant] from the service, maintain the fines, but let him out of jail so he can get on with his life."

Appellant contends that his defense counsel was ineffective because she (1) failed to object to admission of appellant's statements to the store detectives and Specialist Rose; (2) failed to properly investigate his case; and (3) failed to request Captain Belcher as a sentencing witness. We will analyze each contention separately.

*Failure to object to statements.* AAFES store detectives are required to comply with Article 31 before interrogating a person subject to the UCMJ. *United States v. Quillen,* 27 MJ 312 (CMA 1988). "Interrogation" is defined to include "any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such questioning." Mil. R.Evid. 305(b)(2), Manual for Courts–Martial, United States, 1984.

In her post-trial affidavit, defense counsel states that she did not object to admission of appellant's statements because she "did not believe" that appellant "was being interrogated" at the time he made them. We agree with the court below that appellant's initial statements (that he did not have the money to pay for his purchases; that Specialist Rose knew what it was all about) were spontaneously made and not in response to interrogation.

We also agree with the court below, however, that appellant's statement that he did not have a receipt for his purchases was in response to interrogation by Specialist Rose and his surrender of the bottle of perfume concealed in his pants leg was in response to interrogation by the AAFES detectives. Accordingly, we hold that defense counsel was deficient for failing to object to appellant's unwarned admission and testimonial act.

We hold further, however, that appellant is not entitled to relief because suppression of that evidence would not have produced a different result. *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984); *United States v. Holt,* 33 MJ 400 (CMA 1991). Appellant was caught in the act of stealing. His crime was captured on videotape. He had one of the stolen items in his hand when he was apprehended. Any doubt as to his guilt dissipated when he attempted to deceive the court by proffering a receipt for another purchase made after his apprehension.

■ *Failure to Adequately Investigate.* Appellant contends that his defense counsel was deficient in her pretrial investigation because she did not discover that appellant's receipt, offered in his defense, was for another purchase at a later time. In effect, appellant contends that his defense counsel was deficient because she believed him. In *United States v. Scott,* 24 MJ 186, 192 (1987), this Court observed that "under certain circumstances it may be sufficient for defense counsel to rely on the information provided to him by his client." We will hold defense counsel deficient for believing a client only when there are other factors that would have caused a reasonable counsel to· investigate further.

This is not such a case. Appellant's purported receipt was valid on its face. In light of appellant's representations about the receipt, it was reasonable for defense counsel not to investigate further. *See Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. at 2066–67 (decision not to investigate assessed for reasonableness in light of all circumstances); *United States v. Decoster,* 624 F.2d 196, 209 (DC Cir.1976) (defense lawyer develops case in large part from information supplied by client; court will not "require that a lawyer run beyond, or around, his client").

In this case appellant bears the responsibility for deceiving his counsel. *See Matheson v. King,* 751 F.2d 1432, 1440 (5th Cir. 1985) (counsel not deficient for failing to raise intoxication defense where appellant did not tell counsel he was intoxicated at time of offense), *cert. dismissed as moot,* 475 U.S.

1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986); *Bertolotti v. Dugger,* 883 F.2d 1503, 1520 (11th Cir.1989) (counsel not deficient for failing to raise intoxication defense where defendant told police he lied about his intoxication), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). Accordingly, we hold that defense counsel was not deficient for failing to verify the validity of appellant's purported receipt.

■ *Failure to Request Captain Belcher as a Witness.* We hold that defense counsel was deficient for her failure to contact Captain Belcher prior to trial. Favorable testimony from appellant's commander would have been a powerful defense weapon on sentencing. It was not reasonable for counsel to assume that Captain Belcher would not be favorable merely because other potential witnesses were not favorable. *Strickland v. Washington, supra.* See *United States v. Baynes,* 687 F.2d 659, 668 (3d Cir.1982) ("mere possibility" that investigation might produce nothing does not justify failure to investigate). Nevertheless, this deficiency does not entitle appellant to relief because the second prong of *Strickland* is not met. Captain Belcher's post-trial disclosures to defense counsel made it clear that he would have been a dangerous defense witness, vulnerable to damaging cross-examination, who might have hurt appellant more than helped him.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge WISS concur.

CRAWFORD, Judge, with whom COX, Judge, joins (concurring in the result):

I concur in the result since this is an issue of ineffectiveness of counsel. At least one of the two detectives was subject to the Code. Although we do not know which one was asking the questions, we need not address the continued applicability of *United States v. Quillen,* 27 MJ 312 (CMA 1988). However, I write separately to indicate that *Quillen* overlooks the history behind Article 31, Uniform Code of Military Justice, 10 USC § 831, and· the clear language of Mil.R.Evid. 305(b)(1)‚ Manual for Courts–Martial, United

States, 1984. This rule which became effective in 1980, Exec. Order No. 12198, 45 Fed. Reg. 16,945 and 16,993 (Mar. 12, 1980), now provides: "A 'person subject to the code' includes a person acting as a knowing agent of a military unit or of a person subject to the code." Mil.R.Evid. 305(b)(1), Manual for Courts–Martial, United States, 1969 (Revised edition) (Change 3).

A further discussion of the history behind Article 31 and the rule is set forth in our opinion in *United States v. Raymond*, 38 MJ 136, 139–42 (CMA 1993). *See also United States v. Quillen*, 27 MJ at 315–17 (Cox, J., dissenting). Suffice to say, as in *Raymond*, the detective who was not "subject to the Code" was not acting as a "knowing agent of a military unit," and the history behind Article 31 would not require a warning by an employee of an appropriated fund organization.