*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

───────────────

## UNITED STATES
Appellee

**v.**

### Jason A. SCOTT, Major
United States Army, Appellant

**No. 19-0365**
Crim. App. No. 20170242

Argued November 17, 2020—Decided March 26, 2021

Military Judges: Sean F. Mangan (trial) and
Jennifer B. Green (*DuBay* hearing)

For Appellant: *William E. Cassara*, Esq. (argued); *Major Kyle C. Sprague* (on brief); *Colonel Elizabeth G. Marotta, Lieutenant Colonel Christopher Daniel Carrier,* and *Lieutenant Colonel Tiffany D. Pond*.

For Appellee: *Captain Thomas J. Darmofal* (argued); *Colonel Steven P. Haight*, *Lieutenant Colonel Wayne H. Williams*, and *Major Dustin B. Myrie* (on brief).

Judge MAGGS delivered the opinion of the Court, in which Judges OHLSON and SPARKS joined. Chief Judge STUCKY filed a separate opinion, concurring in part, and dissenting in part, in which Senior Judge RYAN joined. Senior Judge RYAN filed a separate opinion, concurring in part, and dissenting in part.

───────────────

Judge MAGGS delivered the opinion of the Court.

A military judge sitting as a general court-martial found Appellant guilty, consistent with his pleas, of one specification of failure to obey a lawful order and one specification of adultery, in violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 134 (2012). The military judge sentenced Appellant to forfeit $3000 of pay per month for three months, to be restricted to post for thirty days, and to be dismissed from the Army. The convening authority approved the findings and the sentence.

On appeal to the United States Army Court of Criminal Appeals (ACCA), Appellant challenged the severity of his sentence and argued that he had received ineffective assistance of counsel during the sentencing phase of his trial. *United States v. Scott*, No. ARMY 20170242, 2018 CCA LEXIS 522, at *2, 2018 WL 5734693, at *1 (A. Ct. Crim. App. Oct. 30, 2018) (unpublished). The ACCA affirmed the findings of guilt but ordered a hearing pursuant to *United States v. DuBay*, 17 C.M.A 147, 37 C.M.R. 411 (1967), to establish facts relevant to Appellant's ineffective assistance argument. 2018 CCA LEXIS 522, at *21, 2018 WL 5734693, at *8. After receiving the findings and conclusions of the military judge at the *DuBay* hearing, the ACCA summarily affirmed Appellant's sentence.

The assigned issue before this Court is "[w]hether Appellant received ineffective assistance of counsel under the Sixth Amendment of the Constitution." Applying the test from *Strickland v. Washington*, 466 U.S. 668 (1984), we conclude that Appellant has demonstrated a deficient performance by his trial defense counsel but that he has not demonstrated that he suffered prejudice because of the deficiency. We therefore affirm the decision of the ACCA.

## I. Background

In a pretrial agreement, Appellant promised to plead guilty to one specification of adultery and one specification of failure to obey a lawful order. In exchange, the convening authority promised to disapprove any term of confinement in excess of 119 days. The pretrial agreement, however, provided that "[a]ll other permissible punishments may be adjudged."

In accordance with the pretrial agreement, Appellant signed a stipulation in which he admitted the following facts. In the summer of 2015, while stationed at Joint Base Lewis-McChord (JBLM), Appellant began a dating relationship with HM, a civilian fitness instructor on post. Several months after they began dating, Appellant learned that HM was married. Her husband, Sergeant First Class AM, was deployed at the time with a Special Forces unit in a remote part of Afghanistan. In October 2015, Appellant's supervisor, Colonel Michael Harvey, discovered that Appellant was dating a married woman and ordered Appellant to have no contact with

HM. Appellant willfully violated this order by continuing his romantic relationship with HM until on or about January 25, 2016. During this period, they took a trip to New York together, they spent Christmas together, and, on divers occasions, they had sexual intercourse. On the basis of this stipulation, and after further inquiry during an Article 39(a)(1), UCMJ, 10 U.S.C. § 839(a)(1) (2012), session, the military judge accepted Appellant's plea of guilty to the charged offenses of adultery and failing to obey a lawful order.

Appellant's stipulation of fact addressed evidence in aggravation only briefly. The stipulation emphasized that Appellant was a major in the United States Army, that he knew HM's husband was deployed, and that even after his supervisor ordered him to cease contact with HM, Appellant continued to have a sexual relationship with her. The stipulation further stated that Appellant sent text messages to HM in which he referred to her husband by his first name.

At sentencing, the Government provided additional aggravating evidence concerning Appellant's text messages to HM, which the ACCA accurately summarized as follows:

> In these messages, [Appellant] referred to [Sergeant First Class] AM by his first name and in disparaging tones. [Appellant] would send numerous messages to Mrs. HM, in turn threatening her, and then professing love for her. After being told by her in cold terms to move on, [Appellant] told Mrs. HM that she will become a "whore" that "no man wants a whore for a wife", and she will regret not being with him.

> On 5 January 2015, [Appellant] sent Mrs. HM a text-message link to a news story about a Special Forces soldier who had been killed in Afghanistan and other soldiers who were "trapped." Using [Sergeant First Class] AM's first name, the message contained a single question, "Is [Sergeant First Class AM] dead?" Mrs. HM responded that she did not know. Later, she told [A]ppellant that her husband was trapped and surrounded, that members of the unit had been killed, and that she would not receive any additional news for the next seventy-two hours.

> [Appellant] then suggested that she might get lucky if [Sergeant First Class] AM were to be killed in action. She responded with a two-word explicative. [Appellant] then told her that if [Sergeant First

Class] AM survived, he would have appellant's "left-
overs" followed by, "But I doubt he will touch you af-
ter he knows what you have been doing."

*Scott*, 2018 CCA LEXIS 522, at *3–4, 2018 WL 5734693, at
*1–2.

To provide evidence in extenuation and mitigation, trial
defense counsel called three witnesses who recently had su-
pervised or served with Appellant at JBLM. Colonel Harvey
testified that Appellant "did everything to standard, if not
above standard." He further testified that Appellant had re-
habilitative potential. But on cross-examination, Colonel
Harvey acknowledged that Appellant had violated his order
and that Appellant had lied to him. Colonel Scott Halverson,
who succeeded Colonel Harvey as Appellant's supervisor, tes-
tified that Appellant had expressed remorse and that he had
rehabilitative potential. Chief Warrant Officer Five James Is-
rael, a soldier with thirty years of service and five deploy-
ments, testified that he would deploy with Appellant.

Appellant also made an unsworn statement in which he
apologized both in general and specifically to Sergeant First
Class AM. He acknowledged his conduct was "wrong" and
that he "made a mistake." He also addressed some of his com-
bat experience in Iraq as a helicopter pilot. Appellant ex-
plained that he had received physical and emotional injuries
during his service in combat. He asked the court-martial in
sentencing him to "look at the totality of my 25-year career,
instead of an 85-day lapse of judgment."

On appeal, Appellant argued in part that his trial defense
counsel had been ineffective in presenting his sentencing
case. In addressing this argument, the ACCA focused its opin-
ion on two alleged deficiencies. The first alleged deficiency
was trial counsel's failure to introduce any documentary evi-
dence regarding Appellant's career, requiring the military
judge to rely mostly on his Officer Record Brief (ORB) which
the Government had introduced. The ACCA agreed that this
performance was deficient, finding "no reasonable tactical
reason why counsel did not do more to investigate and seek
out information regarding appellant's military career." But
the ACCA determined that Appellant had not demonstrated
prejudice based on this deficiency. Examining Appellant's of-

ficer evaluation reports, the ACCA observed that they sometimes described Appellant's performance in "lofty terms," but stated that "our overall assessment is they are lackluster." Similarly, the ACCA found that Appellant's award citations added little to what already appeared in Appellant's ORB.

The second alleged deficiency was trial defense counsel's failure to call witnesses who could testify about the character of Appellant's service prior to the misconduct. Appellant cited affidavits from these witnesses that he had submitted to the convening authority. The affidavits all contained very positive and supportive statements. Colonel (retired) David M. Fee described how Appellant had participated in hundreds of battles in Iraq and described Appellant's heroic conduct in a particularly fierce engagement south of Baghdad. Lieutenant Colonel Aaron Schilleci wrote about Appellant's exceptional conduct during more than one thousand hours of fighting against Al Qaeda in Iraq and the Taliban in Afghanistan. Chief Warrant Officer Five (retired) Rusty Norris described the difficulty of Appellant's missions and the incoming fire that Appellant and other pilots routinely faced. Chief Warrant Officer Four (retired) Earl Matherly lauded Appellant's competence as an officer and commander while deployed. And former Major James R. Reese characterized Appellant as hardworking, intense, and trustworthy during the times they served together.

In reviewing these affidavits, and additional affidavits from Appellant and trial defense counsel, the ACCA encountered a factual disagreement. Appellant swore that he asked trial defense counsel to ask these five witnesses to testify. Both trial defense counsel swore in their affidavits that they interviewed every potential witness whom Appellant identified. Colonel Fee and Chief Warrant Officer Five Norris, however, swore in their affidavits that trial defense counsel had not contacted them.

To address this inconsistency, the ACCA ordered a *DuBay* hearing on three issues:

> 1. Did MAJ Scott tell either CPT JH or CPT MD the names of COL Fee, CW5 Norris, and the other three witnesses listed in his affidavit?

2. Did CPT JH or CPT MD contact COL Fee, CW5 Norris, and the three other witnesses listed in the affidavit?

3. If yes to any or all witnesses listed in question (2), was there a strategic or tactical reason not to call the witness(es) to testify during pre-sentencing proceedings?

The *DuBay* military judge held a hearing at which the relevant witnesses testified. The military judge answered the first question in the affirmative, finding that Appellant had told his trial defense counsel the names of the five witnesses "at some point during his representation" but that Appellant "did not request they be contacted as presentencing witnesses after his offer to plea had been accepted." The *DuBay* military judge answered the second question in the negative, finding that trial defense counsel did not contact the witnesses. Because the answer to the second question was no, the *DuBay* military judge did not answer the third question.

The *DuBay* military judge also made findings concerning the reasons that trial defense counsel presented limited evidence. Most significantly, the DuBay military judge stated:

> [E]vidence provided to this court . . . revealed a significantly understaffed TDS office, in a very busy jurisdiction. [The lead trial defense counsel] was handling a significant case load. He assessed, rightly or wrongly, that the Appellant was not likely facing a dismissal for the charges he was pleading guilty to, and therefore did not dig into statements made by the Appellant in which he provided names of these witnesses. The reasonable inference that arises from [the lead trial defense counsel's] testimony is that once he had avoided the preferral of sexual assault charges [that had at one point been considered] and obtained a favorable deal for the Appellant with respect to the remaining charges, the Appellant's case became a lower priority for [the lead trial defense counsel]. Therefore, he did not assess the testimony of additional witnesses as necessary and did not request additional witnesses from the Appellant but relied on the list of local witnesses the appellant provided.

Upon receiving the findings and conclusions of the *DuBay* military judge, the ACCA affirmed the sentence in a summary per curiam opinion that stated only that the court found the findings and sentence to be correct in law and in fact.

## II. Discussion

### A. Standard of Review and Applicable Law

The question whether an appellant has received ineffective assistance of counsel at trial is a legal issue that we review de novo. *United States v. Captain*, 75 M.J. 99, 102 (C.A.A.F. 2016). When a military judge at a *DuBay* hearing has made findings of fact relevant to the issue of ineffective assistance of counsel, we accept the findings as correct unless they are clearly erroneous. *Id.* In this case, neither side contends that any of the *DuBay* military judge's findings of fact are incorrect.

"To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *Id.* at 103 (citing *Strickland*, 466 U.S. at 698). To establish the element of deficiency, the appellant first must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and "must show specific defects in counsel's performance that were 'unreasonable under prevailing professional norms.'" *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)). At the sentencing phase, ineffective assistance may occur if trial defense counsel either "fails to investigate adequately the possibility of evidence that would be of value to the accused in presenting a case in extenuation and mitigation or, having discovered such evidence, neglects to introduce that evidence before the court-martial." *United States v. Boone,* 49 M.J. 187, 196 (C.A.A.F. 1998). To establish the element of prejudice, the appellant must demonstrate "a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Prejudice may occur at the sentencing phase, even when trial defense counsel presents several character witnesses, if "there is a reasonable probability that there would have been

a different result if all available mitigating evidence had been exploited by the defense." *United States v. Akbar*, 74 M.J. 364, 438 (C.A.A.F. 2015) (citation omitted) (internal quotation marks omitted).

In the discussion that follows, we determine that trial defense counsel was deficient but that this deficiency did not prejudice Appellant. In considering both the element of deficiency and the element of prejudice, we are mindful of an important portion of the *Strickland* opinion, which states:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697; *see also Loving v. United States*, 68 M.J. 1, 6 (C.A.A.F. 2009). The Supreme Court's concern was helping courts avoid assessments regarding deficiency that can be difficult in some cases. As we explain below, this is not such a case. Whether counsel was deficient here is not a close call. Accordingly, disposing of the case on prejudice alone would not be markedly easier.

### B. Deficient Performance

Appellant argues that his trial defense counsel were deficient because they neglected to present even a basic presentencing case and had no tactical reason for not introducing additional favorable evidence. The Government responds that trial defense counsel were not negligent for three reasons. First, the Government argues that trial defense counsel presented significant evidence in mitigation and extenuation. As described above, trial defense counsel called Colonel Harvey, Colonel Halverson, and Chief Warrant Officer Five Israel as witnesses and had Appellant make an unsworn statement. Second, the Government argues that trial defense counsel acted in accordance with Appellant's statements and requests. Trial defense counsel asked Appellant to identify possible witnesses who might testify, Appellant identified seven individuals, and trial defense counsel contacted all of them.

The *DuBay* military judge found that while Appellant mentioned the names of five other soldiers, Appellant did not ask trial defense counsel to contact them. Finally, the Government contends that Appellant has not shown that he misunderstood the terms of his pretrial agreement regarding witnesses or the possibility of a dismissal.

In our view, the Government is missing the bigger picture. Although trial defense counsel presented some evidence at sentencing, contacted the witnesses that Appellant requested, and explained the pretrial agreement, these efforts did not overcome a more fundamental problem. Trial defense counsel failed to appreciate the enormous and obvious risk that the court-martial would dismiss Appellant, and accordingly failed to take reasonable steps to address this possibility.

On the issue of appreciating the risk of a dismissal, the *DuBay* military judge found that trial defense counsel "assessed . . . that the Appellant was not likely facing a dismissal for the charges he was pleading guilty to, and therefore did not dig into statements made by the Appellant in which he provided names of these witnesses." In our view, trial defense counsel's assessment of the situation was unreasonable. Several factors, correctly identified by the ACCA, should have made the possibility of dismissal a grave concern. First, while adultery is not always criminal, this case involved extremely aggravating facts (as we discuss more in addressing prejudice). Second, the pretrial agreement expressly stated that the convening authority would approve any lawful sentence in addition to confinement up to 119 days, and dismissal was a lawful punishment. Third, both the preliminary hearing officer and the staff judge advocate recommended that Appellant face trial by general court-martial, rather than face some alternative form of disposition that would not entail the possibility of a court-martial.

On the issue of failing to take reasonable steps to address the risk of a dismissal, we view the situation as follows. Having failed to appreciate the probability of dismissal, trial defense counsel prepared as if a dismissal was not on the table. Accordingly, trial defense counsel did not seek witnesses who could testify about Appellant's combat record and his multiple instances of bravery. Trial defense counsel also did not seek

non-local witnesses who could testify about other impressive aspects of Appellant's long military career. Trial defense counsel likewise did not prepare a "good soldier book" or seek documentation of the post-traumatic stress disorder that Appellant mentioned in his unsworn statement.

Every case is different, and trial defense counsel must make difficult choices in preparing for the sentencing phase of a court-martial. But like the ACCA, we see no reasonable tactical reason that trial defense counsel might have had for not seeking additional information about Appellant's long career in the Army and his combat service. We recognize that, in some cases, trial defense counsel may not wish to call witnesses on sentencing who, through their testimony, may open the door for the government to present additional adverse evidence. *See, e.g.*, *United States v. Friborg*, 8 C.M.A. 515, 516, 25 C.M.R. 19, 20 (1957) (determining that "the accused and his counsel decided advisedly to make no statement and to take a chance on the sentence"); *Captain*, 75 M.J. at 103–04 (considering the government's argument that trial defense counsel withheld potential evidence of good military character to avoid opening the door to rebuttal evidence). But in its briefs before this Court, the Government has not identified any tactical reasons for trial defense counsel's decisions, and we also perceive none.

To be sure, in evaluating claims of deficient performance for failing to investigate, this Court does not engage in "second-guessing tactical decisions" that might be characterized as "mere Monday-morning quarterbacking." *United States v. Sanders*, 37 M.J. 116, 118 (C.M.A. 1993). But this case is similar to *United States v. Powell*, 40 M.J. 1, 4 (C.M.A. 1994). In *Powell*, trial defense counsel failed to contact a possible sentencing witness—the accused's commanding officer—based on an unfounded assumption that he would not provide helpful information. As in this case, we saw no tactical reasons for the decision. We explained: "Favorable testimony from [the] appellant's commander would have been a powerful defense weapon on sentencing. It was not reasonable for counsel to assume that [the commander] would not be favorable merely because other potential witnesses were not favorable." *Id.* at 10. Other cases are similar. *See, e.g., Boone*, 42 M.J. at 313

(remanding for further factfinding about possible tactical explanations when the Court could "find no explanation and can discern no tactical reason from the record for the meager defense presentation"); *United States v. Allen,* 8 C.M.A. 504, 512, 25 C.M.R. 8, 12 (1957) (similarly remanding to determine whether there were tactical reasons for trial defense counsel's decision to present no mitigating evidence or statement and to take a chance on the sentence). For these reasons, we conclude the Appellant has shown that trial defense counsel were deficient in preparing for the sentencing phase of the trial in this case.

## C. Prejudice

Although Appellant has shown the element of deficient performance, the question remains whether he can also establish prejudice. Appellant argues that he was prejudiced because "[b]ut for counsel's error, [he] would have been sentenced with due consideration of the substantial evidence in extenuation and mitigation, making his dismissal from the service an unlikely result." In support of this contention, Appellant cites the five affidavits, described above, which assessed very favorably Appellant's bravery and skill during dangerous combat missions and his service as an officer before his misconduct. The Government responds that Appellant has not shown that the testimony of the five additional witnesses would have changed the sentence given the egregious nature of Appellant's offenses.

As discussed above, under *Strickland*, to prevail on a claim of ineffective assistance, an appellant must demonstrate "a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Appellant has not met this standard. We do not see a reasonable probability that the military judge at sentencing would have adjudged a different sentence if the military judge had considered not only the evidence in extenuation and mitigation that trial defense counsel actually presented at trial, but also the additional evidence that they could have presented.

The military judge at sentencing knew from Appellant's ORB that he had served his nation for more than twenty years, that he deployed overseas as a helicopter pilot, and

that he had won numerous awards. The military judge also knew from Appellant's unsworn statement that Appellant deployed into war zones and flew dangerous missions and had been injured. The affidavits from the five witnesses who were not called to testify at sentencing covered the same subjects, but they presumably would have contributed favorably to the overall picture of Appellant as a soldier and an officer through their unequivocally positive descriptions of his bravery and skill.

Yet given the stipulated facts and the evidence in aggravation presented at trial, we see no reasonable probability that this additional extenuating and mitigating evidence was so transformative that it would have changed the result. Appellant was an officer with considerable experience. He committed adultery with a fellow soldier's wife. The soldier was enlisted and deployed to a remote part of Afghanistan. Appellant sent despicable text messages in which he referred disrespectfully to AM, mocking his enlisted status and his lower pay. At a time when AM was in combat, under fire, and isolated, he told HM that it would be lucky if the enemy killed AM. Appellant also referred to HM in his text with an indecent epithet. All the while, Appellant was willfully disobeying an order from his supervisor to have no contact with HM—an order that he received in writing and that he signed. The contact in violation of the order was not minimal and perfunctory, but rather was lengthy and intimate. Appellant thus cast doubt on whether future commanders could rely on him to carry out orders.

We recognize that Appellant served his country with skill and honor for many years and accomplished much for which he justly could take pride. But the evidence of his misconduct, and its effects on its victims and the Army, led the military judge to sentence Appellant to a dismissal. The additional evidence that trial defense counsel should have looked into, rather than dismissing outright based on an erroneous assumption, was mitigating. But that is not enough under *Strickland* to establish prejudice.

### III. Conclusion

We answer the assigned question in the negative and affirm the judgment of the United States Army Court of Criminal Appeals.

Chief Judge STUCKY, with whom Senior Judge Ryan joins, concurring in part and dissenting in part.

The mission of the Army is to "fight and win our nation's wars." The Official Homepage of the United States Army, *Who We Are,* https://www.army.mil/about/ (last visited Mar. 4, 2021). Appellant was at the tip of the spear in one of those wars, serving in combat as an attack helicopter pilot. Nevertheless, his trial defense team failed to present the most compelling evidence of how he performed that mission, his fitness reports, and the testimony of those who fought beside him. Therefore, I respectfully dissent from the majority's holding that this grossly deficient performance did not prejudice the defense.

To establish prejudice, Appellant:

> must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted) (citations omitted); *see also United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015).

The majority opinion correctly summarizes what the military judge knew about Appellant and his offenses before he pronounced the sentence. But the devil is in the details he did not know and the diminished credibility attached to much of what he learned from Appellant. The military judge knew from Appellant's Officer Record Brief that Appellant had served more than twenty years in the Army and had deployed overseas to a combat zone as a helicopter pilot. But the military judge knew nothing of the hazardous missions he flew or the injuries he suffered other than from Appellant's unsworn statement, which is not afforded the same credibility as sworn testimony. *See United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011); *United States v. Breese*, 11 M.J. 17, 24 (C.M.A. 1981).

The defense team failed to provide the military judge with the strongest mitigation evidence available: Appellant's fitness reports, detailing his duty performance over a twenty-five-year military career, including while in combat; an estimate of the devastating financial consequences to him of a dismissal;[1] and most importantly, the testimony, by whatever means, of those who had served with him in combat.

Although a close case, under these circumstances, Appellant has demonstrated a reasonable probability that, absent trial defense counsel's deficient performance, his sentence would have been different.

---

[1] As a senior officer, the military judge probably had a general idea of the value of retirement benefits Appellant would lose as a result of a dismissal; however, it is doubtful that he had a full appreciation of the value of the retirement pay and benefits over an expected lifetime, other than it is substantial.

Senior Judge RYAN, concurring in part and dissenting in part.

There are major problems with this case. To begin with, the deficiencies in performance of the trial defense counsels in the sentencing case deprived the sentencing authority of significant and impactful mitigation evidence that, in my view, if admitted would present a reasonable probability that Appellant would not have received a dismissal.

And the prejudice from this deficiency was compounded by the actions of the military judge and trial counsel. First, it was a clear abuse of discretion for the military judge to admit an *unsworn statement* as evidence in aggravation in the Government's sentencing case. *See United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019) (recognizing that government evidence in aggravation under Rule for Courts-Martial (R.C.M.) 1001(b)(4) (2016), and a victim's right to be reasonably heard under R.C.M. 1001A(e) (2016), are distinct categories); *see also* Article 42(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 842(b) (2018) (stating that every witness before a court-martial "shall be examined on oath").

Second, both the military judge and the trial counsel *utilized* the unsworn statement as R.C.M. 1001(b)(4) evidence in aggravation, thereby exceeding both the permissible content and the proper use of an unsworn statement admitted under R.C.M. 1001A. *See Hamilton,* 78 M.J. at 342 (recognizing the danger in permitting the government to "slip in evidence in aggravation that would otherwise be prohibited by the Military Rules of Evidence, or information that does not relate to the impact from the offense of which the accused is convicted" under the guise of R.C.M. 1001A).

Third, despite the existence of a stipulation containing the mitigating fact that Appellant did not know HM was married *until several months after* the relationship began, both the unsworn statement of Sergeant First Class (SFC) MacKay, admitted by the Government in its sentencing case, and the Government's own argument contradicted it, thus skewing the truth and casting Appellant as a predator who "knew all along." *See United States v. Fisher*, 58 M.J. 300, 303 (C.A.A.F. 2003) (observing that the parties cannot contradict a stipulation of fact).

With respect to the essential failure to put on a sentencing case, I fully concur with the majority that the trial defense counsels were clearly deficient in their performance in this case. *United States v. Scott*, __ M.J. __, __ (2) (C.A.A.F. 2021). But I respectfully join Chief Judge Stucky's opinion in full: Appellant is a highly decorated twenty-five-year combat veteran whose entire sentencing case consisted of three witnesses who had known him less than a year and his own unsworn statement. There could not have been a more casual approach to the sentencing proceedings in this case, and, in my view, Appellant has plainly demonstrated a reasonable probability that but for the deficient performance, the result of the proceeding would have been different. In other words, if counsel had complied with even the lowest threshold of professional norms in defending a commissioned officer with a twenty-five-year record of excellent service that included bravery in combat, there is a reasonable probability that he would not have been dismissed from the service.

In the context of this case, the "reasonable probability" test does not mean that the sentencing result would have been different according to a mathematical certainty. Rather, it means a sufficient probability that an appellate court has a real concern about the fairness of the sentencing proceeding. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). How can we not have such a concern in this case? The failure to admit into evidence: (1) his officer evaluation reports; (2) his award citations or certificates;[1] and (3) witness testimony of combat service and rehabilitative potential from witnesses who knew Appellant far longer and better than the witnesses called should give us great pause.

And, contrary to the CCA's factual finding that the evaluation reports were "lackluster," *United States v. Scott*, No. ARMY 20170242, 2018 CCA LEXIS 522, at *18, 2018 WL

---

[1] Appellant was entitled to wear the Bronze Star Medal, the Air Medal (three awards), the Army Commendation Medal (three awards), and the Army Achievement Medal (four awards), among others. He served in combat in Iraq and Afghanistan. While the Officer Record Brief (a one-page summary document) listed the acronyms for the awards, the military judge had no idea either why Appellant was given the awards or that he earned many of them in combat, which only accentuates the prejudice that accrued from the trial defense counsels' failure to offer them into evidence.

5734693, at *7 (A. Ct. Crim. App. Oct. 30, 2018)
(unpublished), many of the evaluation reports were quite
laudatory, recommending Appellant for command and
promotion ahead of his peers, recognizing his unlimited
potential, and uniformly noting his adherence to all of the
Army's "Values," etc. The CCA's assessment was, in my view,
clearly erroneous. *See United States v. McAllister*, 55 M.J.
270, 277 (C.A.A.F. 2001) (noting that findings of fact by a
court of criminal appeals may be overturned when they are
clearly erroneous).

Why is this important? Because it thoroughly bolsters the
argument that a ninety-day period of unacceptable and crude
behavior and disobedience to an order was an aberration in
twenty-five years of unblemished service. *See United States v.
Alves*, 53 M.J. 286, 290 (C.A.A.F. 2000) (concluding that trial
defense counsel should have explored evidence to show that
the appellant's actions were "out of character"). Moreover, the
reports discuss in detail the jobs Appellant held, and the work
that he did in and out of combat, a stark contrast to the
anemic one-page Officer Record Brief, which is filled with
acronyms with no explanation—it nowhere notes "Operation
Iraqi Freedom," as just one example.

Furthermore, the witnesses who were *not* called, *Scott*, __
M.J. at __ (5), all knew Appellant for many years, would have
testified to his rehabilitative potential in strong terms, and
had detailed bases for their laudatory views of Appellant, as
well as his specific good character traits and acts of bravery
in combat, factors in mitigation explicitly set forth in R.C.M.
1001(c)(1)(B) as bases for lessening punishment. While every
case must be evaluated on its unique facts, in other similar
cases we have found prejudice. *See United States v. Dixon*, 64
M.J. 433 (C.A.A.F. 2007) (summary disposition) (lower court's
decision as to sentence set aside where the trial defense
counsel failed to introduce any evidence of the appellant's
medals and decorations); *United States v. Boone*, 42 M.J. 308
(C.A.A.F. 1995) (lower court's decision on sentence set aside
where the trial defense counsel offered only the appellant's
unsworn statement in presentencing); *cf. United States v.
Demerse*, 37 M.J. 488 (C.M.A. 1993) (failure of staff judge
advocate to advise convening authority of Vietnam awards
and decorations was plain error).

Adultery as charged in this case was criminal because Appellant persisted in the affair for several months with the wife of an enlisted soldier *after* he learned she was married and was ordered to desist. *Manual for Courts-Martial, United States* pt. IV, para. 62.c.(2) (2016 ed.) (*MCM*). Rather than being the most egregious case of adultery, the record fully supports the reality that Appellant was misled by HM into believing she was NOT married, *cf. id.* at para. 62.c.(4) (recognizing mistake of fact as to marital status as a complete defense), believed that he was marrying her, and that the toxic meltdown of the relationship began after he learned that she was married and her husband's return became imminent. Indeed, the Government-prepared stipulation of fact acknowledged Appellant did not know HM was married *until several months after* the relationship began. And the Government did not dispute Appellant's unsworn statement that it was HM that proposed marriage to him and failed to disclose her marital status.

The importance of these facts in mitigation was overshadowed by government overreach and the military judge's missteps. Whatever use the government may make of a victim's R.C.M. 1001A unsworn statement in argument, there is no authority (nor should there be) permitting the government to offer, or the military judge to accept, an unsworn statement as government *evidence* in aggravation. In doing so, the military judge abused his discretion. *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018). Neither may the government contradict its own stipulation of fact, *Fisher*, 58 M.J. at 303, nor argue facts it demonstrably knows to be untrue. *See United States v. Cassity*, 36 M.J. 759, 764 (N.M.C.M.R. 1992) (explaining the duty of candor by the prosecution in sentencing argument). Yet all of these things happened in this case.

First, there is no question that the Government called SFC MacKay in its sentencing case to make an unsworn statement as "evidence" in aggravation over the defense objection that a witness should be subject to cross-examination "if trying to present matters in aggravation." Further, the military judge perceived the witness as one in aggravation and assessed his unsworn testimony as "allowable under RCM 1001, subsection (b)." This was a clear abuse of discretion: while SFC MacKay may well have been

able to testify as such a witness under oath, nothing in the rules permits a *witness* to give evidence or testify via an unsworn statement, which is precisely what happened here. Article 42(b), UCMJ; *Hamilton,* 78 M.J. at 341 (recognizing that "witnesses are required to swear an oath or affirmation before testifying" (citing Military Rule of Evidence 603)).

Second, this was not without consequence, as some portions of the unsworn statement offered as evidence in aggravation far exceeded that which would have been permissible under an unsworn statement given pursuant to R.C.M. 1001A. For example, SFC MacKay's vivid description of his "violent deployment," during which he, by his own admission, knew nothing of his wife's affair, is not victim impact evidence "directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A (b)(2). Rather it was used as relevant to the terminal evidence of the offense and "in aggravation." It is precisely this mishmash and misuse of the unsworn statement permitted under then R.C.M. 1001A with the evidence permitted under R.C.M. 1001(b)(4) we both cabined and deemed prohibited in *Hamilton* and *Barker*.

Third, though the stipulation of fact clearly acknowledged that Appellant did not know HM was married *until several months after* the relationship began, the Government nonetheless argued in sentencing that "[h]e knew all along," after it introduced SFC's MacKay's unsworn statement to inaccurately complain that Appellant knowingly preyed on an enlisted man's wife while her husband was deployed, to call him a predator, and to emotionally decry SFC MacKay's loss of faith in officers, rather than reflect upon the perfidy of his own spouse. In my view, this was malfeasance by the Government, and these emotionally charged inaccuracies and irrelevancies almost certainly influenced the military judge into awarding a dismissal, just as it crept into the Army Court of Criminal Appeals' opinion.[2] *Scott*, No. ARMY 20170242, 2018 CCA LEXIS 522, at *6–7, 2018 WL 5734693, at *3.

---

[2] Further, the CCA erroneously relied upon "the risk and consequences of distraction in combat" in deciding that a dismissal was appropriate for Appellant's offenses, given that HM's husband testified he learned of the affair only when he returned home. *Scott*,

**Conclusion**

Because of the strong mitigation evidence that should have been and was not pursued or admitted and the missteps by both the Government and the military judge with respect to SFC MacKay's unsworn statement and the stipulation of fact, I respectfully dissent from the majority's conclusion that the deficiency in trial defense counsels' performance was not prejudicial.[3] I would set aside the sentence and order a sentence rehearing.

---

No. ARMY 20170242, 2018 CCA LEXIS 522, at *6, 2018 WL 5734693, at *2.

[3] Finally, it is entirely unclear why, after the CCA ordered a hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967), to determine whether Appellant gave witness names to his counsel as a predicate to determining prejudice (and the *DuBay* military judge found that he did), that same court failed to conduct a prejudice analysis for counsel's failure to contact those witnesses but instead summarily affirmed the findings and sentence. *Scott*, No. ARMY 20170242, 2018 CCA LEXIS 522, at *21, 2018 WL 5734693 at *8.